Christopher D. Holt, Bar No. 228399
KLINEDINST PC
5 Hutton Centre Drive, Suite 1000
Santa Ana, California 92707
(714) 542-1800/FAX (714) 542-3592
cholt@klinedinstlaw.com

Attorneys for Defendant
NORTHLAND GROUP, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAVIA LAWSON,<br><br>          Plaintiff,<br><br>     v.<br><br>NORTHLAND GROUP, INC.,<br><br>          Defendant. | Case No. 2:12-cv-7517 PSG(JEMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NORTHLAND GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br><u>Hearing</u><br>Date:            January 6, 2014<br>Time:            1:30 p.m.<br>Courtroom:   880<br>Judge:           Hon. Phillip S. Gutierrez |

TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. UNDISPUTED FACTS .................................................................................... 2

III. APPLICABLE LAW ........................................................................................ 4

IV. ARGUMENT .................................................................................................... 5

    A. PLAINTIFF HAS FAILED TO PRODUCE ANY EVIDENCE SUPPORTING HER ALLEGATIONS AGAINST NORTHLAND. ............ 5

    B. PLAINTIFF FAILED TO PRODUCE EVIDENCE SUPPORTING HER CAUSES OF ACTION. .................................................................... 7

        1. COUNT I: ROSENTHAL ACT ..................................................... 7

        2. FEDERAL FAIR DEBT COLLECTION PRACTICES ACT .......... 9

V. CONCLUSION ............................................................................................... 11

KLINEDINST PC
5 HUTTON CENTRE DRIVE, STE. 1000
SANTA ANA, CALIFORNIA 92707

- i -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NORTHLAND GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**
**2:12-cv-7517 PSG(JEMx)**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) .................................................................................... 4

*Carmen v. San Francisco Unified Sch. Dist.*
    237 F.3d 1026 (9th Cir. 2001) ..................................................................... 5

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ................................................................................. 4, 5

*Gibson v. County of Washoe, Nev.*
    290 F.3d 1175 (9th Cir. 2002) ..................................................................... 5

*Keenan v. Allan*
    91 F.3d 1275 (9th Cir. 1996) ....................................................................... 5

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
    210 F.3d 1099 (9th Cir. 2000) .................................................................. 4, 5

*Reese v. Jefferson Sch. Dist. No. 14J*
    208 F.3d 736 (9th Cir. 2000) ....................................................................... 5

**Statutes**

15 U.S.C. section 1692b ..................................................................................... 9, 10

15 U.S.C. section 1692c ..................................................................................... 9, 10

15 U.S.C. section 1692d ..................................................................................... 9, 10

California Civil Code section 1788.11 ................................................................. 7, 8

California Civil Code section 1788.12 ................................................................. 7, 8

Fed.R.Civ.P. 56(c) ..................................................................................................... 4

- ii -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NORTHLAND GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**
**2:12-cv-7517 PSG(JEMx)**

## I. INTRODUCTION

Plaintiff Tavia Lawson's ("Plaintiff") primary allegations against Defendant Northland Group, Inc. ("Northland") are that Northland, a debt collector, called Plaintiff's mother to obtain more than just location information and that Northland disclosed the existence of Plaintiff's outstanding debt to Plaintiff's mother. Plaintiff has not produced any evidence supporting the allegations and in fact, the testimony of Plaintiff and her mother contradicts the allegations.

Plaintiff's mother, Lorese Lawson, testified that she received a number of calls from callers trying to reach Plaintiff, but she did not know who was calling, the callers did not identify themselves and she cannot recall the numbers they called from. She testified that after the calls she passed message slips to Plaintiff. Plaintiff testified that they slips did <u>not</u> say "Northland" and she cannot recall the telephone numbers on the slips.

Plaintiff destroyed the slips and has not produced any documentation of the calls to her mother. Plaintiff testified that she had at least eight other outstanding debts and she does not know which debt Northland was collecting. Plaintiff sued at least four collection agencies before she filed her lawsuit against Northland. If Plaintiff had multiple accounts in default, and the callers did not identify themselves to Plaintiff's mother, how can Plaintiff know that it was Northland to which her mother was talking?

Northland's own records indicate that it did indeed attempt to contact Plaintiff by phone, but nobody answered any of the calls. A few of the calls reached an answering machine but as a matter of policy, Northland does not leave messages for callers in California and did not leave any messages for Plaintiff.

Plaintiff testified she knows callers from Northland talked to her mother because her attorneys told her that all of the calls to her mother's phone were from Northland. But Plaintiff has failed to produce any admissible evidence that her
///

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NORTHLAND GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**
**2:12-cv-7517 PSG(JEMx)**

mother talked to anyone from Northland or that Northland disclosed any information about an outstanding debt to her mother.

Plaintiff raises two other allegations against Northland - that Northland contacted Plaintiff "numerously" and at times known to be inconvenient to Plaintiff in order to harass her. However, Plaintiff testified that she did not receive *any* calls from Northland.

Based on the lack of any evidence supporting her allegations, Northland respectfully requests that the court grant the motion for summary judgment and dismiss the action in its entirety.

## II. UNDISPUTED FACTS

Plaintiff Tavia Lawson has lived with her mother, Lorese Lawson, since 2004. [Separate Statement of Uncontroverted Facts (SSUF), no. 1.] The land line that connects the telephone in the living room, (626) 915-6972, belongs to Plaintiff's mother but Plaintiff uses the telephone from time to time and used it as a contact number when she purchased her home. [SSUF no. 2]

Plaintiff incurred eight other debts that went into default in the years after 2004. [SSUF no. 3] Plaintiff filed lawsuits against at least four other creditors / collection agencies prior to the lawsuit against Northland. [SSUF no. 4] In 2012, a number of calls were made to Plaintiff's mother's telephone seeking Plaintiff. The callers did not identify themselves and Plaintiff's mother cannot recall the numbers they called from. [SSUF no. 5] Plaintiff's mother cannot recall anything specific she was told by any of the callers except that they asked for Plaintiff and that one of the callers told her he or she was calling about a debt. [SSUF no. 6] Plaintiff's mother informed the callers that they had reached *her* number, but refused to provide Plaintiff's contact information to the callers. [SSUF no. 7] Plaintiff's mother wrote messages on slips of paper and gave the slips to Plaintiff but the slips did not say "Northland". [SSUF no. 8] Plaintiff destroyed the slips of
///

paper. [SSUF no. 9] Plaintiff cannot recall the names or telephone numbers on the slips of paper. [SSUF no. 10]

In January 2012, a creditor placed one of Plaintiff's outstanding accounts with Northland for collection. [SSUF no. 11] Northland sent Plaintiff letters informing her of the debt placement. Plaintiff received at least two of the letters but did not respond to them. [SSUF no. 12] Northland did not call plaintiff on her cell phone. [SSUF no. 13] Between January and April, 2012, Northland made a number of calls to Plaintiff, but Northland never successfully reached Plaintiff, *or anyone else*, through its calls. [SSUF no. 14] Northland reached an answering machine on some of the calls but did not leave a message. [SSUF no. 15]

On May 7, 2012, Northland received a letter from an attorney claiming to represent Plaintiff and demanding a cash payment under threat of a lawsuit. Northland immediately stopped collection activity on Plaintiff's account. [SSUF no. 16] On May 9, 2012, Northland received a call from Plaintiff's mother's telephone number, 626-915-6972, but the caller hung up before the call could be transferred to a representative. [SSUF no. 17]

Plaintiff filed her lawsuit on July 23, 2012. Northland propounded written discovery on Plaintiff, including numerous requests for evidence supporting her allegations against Northland. For example:

> REQUEST FOR PRODUCTION NO. 9:
> Produce all DOCUMENTS that refer or relate to calls YOUR mother received from Northland.
>
> REQUEST FOR PRODUCTION NO. 11:
> Produce all DOCUMENTS that support YOUR contention that Northland disclosed the existence of the debt to YOUR mother.

In all, Northland propounded thirteen requests seeking production of documents related to calls from Northland or that supported Plaintiff's contentions based on those calls.

- 3 -

In response, Plaintiff produced only a single document – a May 3, 2012 letter sent by Plaintiff's *counsel* threatening to sue Northland if it did not make a $4,500 payment. The letter included a list of alleged violations but did not include any reference to the calls made to Plaintiff's mother. Plaintiff failed to produce any documentary evidence supporting her allegations and failed to produce documentation of the telephone calls. [SSUF no. 18] See Exhibit 5 (the Requests for Production) and Exhibit 6 (Plaintiff's responses and the attached letter). Discovery has now closed.

### III.  APPLICABLE LAW

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id*. at 322.

However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. *Id*. at 323. To withstand a motion for summary judgment, the non-movant

- 4 -

must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *Nissan Fire*, 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). The Court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

## IV. ARGUMENT

### A. Plaintiff Has Failed To Produce Any Evidence Supporting Her Allegations Against Northland.

Plaintiff makes only three factual allegations against Northland, found at page two of her Complaint (attached as Exhibit 2 to the Appendix of Exhibits):

> 4. At various and multiple times prior to the filing of the instant complaint, including within the one year preceding the filing of this complaint, Defendant contacted Plaintiff in an attempt to collect an alleged outstanding debt.
>
> 5. Plaintiff is informed and believes Defendant contacted Plaintiff numerously (sic), and at times Defendant knew where (sic) inconvenient to Plaintiff, with intent to harass her.
>
> 6. Defendant also contacted Plaintiff's mother, beginning in or around April 2012, in attempting to collect an alleged outstanding debt from Plaintiff. Plaintiff is informed and believes Defendant contacted her mother at telephone number (626) 915-6972, from telephone number (866) 275-6020. Plaintiff is informed and believes Defendant contacted her mother numerously, to obtain more than just Plaintiff's location

- 5 -

information, and also disclosed the existence of Plaintiff's alleged outstanding debt to Plaintiff's mother.

The remainder of the "allegations" on pages three and four of the Complaint are simply restatements of the statutory sections Plaintiff contends were violated by Northland.

Plaintiff has failed to produce any evidence supporting any of the allegations in her Complaint, and more significantly, the deposition testimony of Plaintiff and her mother mostly ***contradict*** the factual allegations.

The first allegation is that Northland contacted Plaintiff in an attempt to collect an alleged outstanding debt. The second is that Northland contacted Plaintiff "numerously" and at times Defendant knew were inconvenient to Plaintiff with the intent to harass her. These allegations are contradicted by Plaintiff's deposition testimony and the evidence.

It is undisputed that Northland sent Plaintiff letters and that Plaintiff received at least two of them. [SSUF no. 12] It is also undisputed that Northland never successfully called Plaintiff. [SSUF no. 14] Plaintiff testified that she did not receive *any* calls from Northland and that she *never* talked to anyone from Northland. [SSUF No. 13]

The third allegation, at paragraph 6, is the basis of the Complaint against Northland. Plaintiff alleges that Northland placed calls to a landline that belonged to Plaintiff's mother and that Northland disclosed the existence of Plaintiff's debt to her mother and called her mother for "an improper purpose." In support of this allegation, Plaintiff offered the deposition testimony of her mother.

However, Plaintiff's mother testified that she could not identify the callers and could not recall the numbers from which they called. [SSUF no. 5] Plaintiff's mother was told by Plaintiff that the calls were from Northland. Plaintiff testified that she learned the calls were from Northland from her attorneys.

///

- 6 -

Despite significant litigation experience, Plaintiff destroyed the message slips she was given by her mother. [SSUF no. 9] Despite discovery requests, no documentation of the calls was produced. [SSUF no. 18]

Moreover, there is *undisputed* evidence that the calls made by Northland to Plaintiff were not answered. [SSUF no. 14] Some of the calls were picked up by an answering machine, but the *undisputed* evidence is that Northland did not leave messages. [SSUF no. 15]

Plaintiff testified that she had a number of outstanding debts in default and that she filed lawsuits against a number of other creditors and collectors based on calls they made to her. Not coincidentally, Plaintiff's mother also testified that the calls to her phone came from *different numbers* and carried *different caller ID messages*. [SSUF no. 5. See also, Lorese Lawson deposition, at pp. 19:5 – 20:17] The testimony actually suggests that Plaintiff's mother received calls from a number of different callers, but because they did not identify themselves to Plaintiff's mother, there is no way to determine which callers disclosed the existence of a debt.

### B. <u>Plaintiff Failed to Produce Evidence Supporting Her Causes of Action.</u>

Plaintiff's Complaint alleges two causes of action: "Count I" for violation of the California Rosenthal Fair Debt Collection Act ("Rosenthal Act") and "Count II" for violation of the Federal Fair Debt Collection Practices Act ("FDCPA").

#### 1. Count I: Rosenthal Act

Plaintiff contends that Northland violated three sections of the Rosenthal Act: Cal. Civ. Code §§ 1788.11(d) and (e) and 1788.12(b).

///
///
///
///

- 7 -

California Civil Code section 1788.11 proscribes certain actions in the collection of a debt including:

> (d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or
>
> (e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances.

The undisputed evidence is that Northland did not cause Plaintiff's telephone to ring at all and that Northland did not communicate with Plaintiff with *any* frequency. Plaintiff admits that Northland did not call her phone. [SSUF no. 13]

California Civil Code section 1788.12 also proscribes certain practices, including

> (b) Communicating information regarding a consumer debt to any member of the debtor's family, ***other than*** the debtor's spouse or ***the parents or guardians of the debtor*** who is either a minor or ***who resides in the same household with such parent or guardian***, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has consented in writing to such communication;

(Emphasis added.)

First and foremost, there is no admissible evidence that Northland communicated any information regarding Plaintiff's debt to her mother. Plaintiff's mother cannot identify the callers and Plaintiff's mother cannot recall the callers reveal any information about Plaintiff's debt. [SSUF nos. 5, 6, 8, 10]

Moreover, this section explicitly includes an exemption when information is communicated to the parents of a debtor who resides in the same household as the debtor. In any event, Plaintiff has wholly failed to produce any evidence of a violation of the Rosenthal Act. Accordingly, the court should dismiss the first cause of action.

///

- 8 -

### 2. Federal Fair Debt Collection Practices Act

Plaintiff contends that Northland violated eight sections the FDCPA: 15 U.S.C. §§ 1692b(1), (2) and (3), 1692c(a)(1) and (b), 1692d(5).

15 U.S.C. section 1692b states:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall--
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

There is no admissible evidence that the calls made to Plaintiff's mother's phone were from Northland. Second, Plaintiff's mother testified that the callers *were* trying to locate Plaintiff.

15 U.S.C. section 1692c subdivision (a)(1) states:

> (a) Communication with the consumer generally. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

///

It is undisputed that Northland did not make *any* calls to Plaintiff's phone. [SSUF no. 13] Moreover, Plaintiff does not even *allege* that Northland called at an inconvenient time or called at a time other than between 8:00 a.m. and 9:00 p.m.

15 U.S.C. section 1692c subdivision (b) states:

> (b) Communication with third parties. Except as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

There is no evidence that Northland communicated with Plaintiff's mother. The callers who spoke to Plaintiff's mother did not identify themselves and Northland has no record of speaking with anyone. [SSUF nos. 5, 6, 8, 10, 14]

15 U.S.C. section 1692d states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

To the contrary, it is undisputed that Northland did not make *any* calls to Plaintiff's phone.

///
///
///
///

- 10 -

## V. CONCLUSION

Plaintiff has failed to produce any admissible evidence to support her allegation that Northland called her mother and disclosed the existence of her debt. It is undisputed that Northland did not call Plaintiff's cell phone, that nobody from Northland talked to Plaintiff, and that Northland did not leave any messages for Plaintiff. Accordingly, Northland respectfully requests that the court grant the motion for summary judgment and dismiss Plaintiff's complaint in its entirety.

*Respectfully Submitted*,

KLINEDINST PC

DATED: November 8. 2013     By: **/s/ Christopher D. Holt**
Christopher D. Holt
Attorneys for Defendant
NORTHLAND GROUP. INC.

15720882v1

- 11 -